**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-0XXXX

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

UNITED AIRLINES, INC.,

Defendant.

---

**COMPLAINT**

---

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the bases of race and national origin, and to provide appropriate relief to Charging Party Alsunbayar "Bondok" Davaabat who was adversely affected by such practices during his employment with United Airlines, Inc. As alleged with greater particularity below, the United States Equal Employment Opportunity Commission alleges that Defendant United Airlines, Inc., engaged in unlawful discrimination by creating a hostile work environment based on race (Asian American) and national origin (Mongolian). The EEOC also alleges that Alsunbayar Davaabat is an aggrieved individual having suffered a

constructive discharge because of the hostile work environment he was subjected to and because of Defendant's failure to prevent or remedy the hostile work environment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant United Airlines, Inc. ("Defendant" or "United"), a Delaware Corporation, has been continuously doing business in the State of Colorado in the City of Denver, and has continuously had at least 15 employees.

5. At all relevant times, United has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINSTRATIVE PROCEDURES

6. Alsunbayar Davaabat ("Davaabat") filed a Charge of Discrimination with the EEOC more than thirty days prior to the institution of this lawsuit, alleging violations of Title VII by Defendant.

7. Defendant United received notice of Davaabat's Charge of Discrimination.

8. On October 18, 2023, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On April 11, 2024, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

**STATEMENT OF CLAIMS**

11. Since at least January 11, 2021, Defendant has engaged in unlawful employment practices in violation of Section 703(a)(l) of Title VII, 42 U.S.C. § 2000e-2(a)(l).

12. Defendant subjected Davaabat to a hostile work environment based on his race (Asian American) and national origin (Mongolian).

13. On or about February 11, 2019, Defendant United hired Davaabat as a Transportation Agent (driver) in United's Denver Catering facility adjacent to Denver International Airport ("DIA").

14. Davaabat was born in Mongolia, an Asian country bordered by China on the South and Russia on the North.

15. Davaabat immigrated to the United States with his mother in 1996 and became a naturalized American citizen in 2009.

16. In his role as Transportation Agent (driver), Davaabat arranged, transported, and delivered food and beverages to United aircraft.

17. The United catering facility is located in a building adjacent to the main DIA terminal.

18. The United catering facility includes, *inter alia,* a dock where production employees clean and load the food and beverage carts; a kitchen where United meals are prepared; an employee cafeteria; and supervisor offices.

19. The employee cafeteria is a large room with a buffet-style service, long lunch tables for employees to eat, and an area for employees to dispose of their food and trays.

20. Across the hall from the lunchroom is the dock area, which contains United's dispatch, a small 4-foot by 6-foot area.

21. Catering supervisors are stationed at dispatch to monitor work on the dock and to organize food delivery between United's catering facility and its airplanes.

22. Both the dispatch area and the employee cafeteria contain computers that non-supervisory employees are allowed to use for United business, including computer-based training.

23. As a result of the COVID-19 pandemic, in 2020 United instituted a mask policy for its employees.

24. Under the United mask policy in effect in January 2021, all employees at the catering facility were required to wear face masks at all times, except when eating.

25. At approximately 8:00 a.m. on January 11, 2021, Davaabat and a coworker, Francisco Pizarro, went to the cafeteria/lunchroom area for a quick meal.

26. Davaabat and Pizzaro sat together toward the end of a long lunch table and took off their masks to eat.

27. As they finished eating, Davaabat and Pizzaro stood up and headed to the disposal area to leave their trays and throw away trash.

28. As they walked to the disposal area, both Davaabat and Pizzaro had their masks down.

29. Davaabat still had a bite of food in his mouth and was chewing as he walked.

30. As Davaabat and Pizarro were walking to the disposal area, they encountered United's Senior Manager – Food & Materials Terry McGurk ("McGurk").

31. Throughout the subsequent events on January 11, 2021, McGurk was a United manager with actual or apparent authority over Davaabat.

32. On January 11, 2021, McGurk observed Davaabat and Pizzaro with their masks down and told them to, "put [their] masks up."

33. Both Davaabat and Pizzaro replied, "yes, sir."

34. McGurk started to walk away, but then turned back, walking toward Davaabat and said, "What did you say, chink?"

35. McGurk then leaned in close to Davaabat's face, said, "I don't like your tone," in a threatening manner while grabbing and twisting Davaabat's right arm to look at Davaabat's United employee badge.

36. McGurk asked if Davaabat valued his job with United.

37. Davaabat replied "yes," he valued his job with United.

38. Davaabat understood that McGurk was threatening his job.

39. McGurk continued to berate Davaabat.

40. McGurk slapped Davaabat on the back while stating words to the effect of, "Lucky for you, I'm a good guy."

41. McGurk then walked away.

42. Pizzaro heard McGurk call Davaabat a "chink."

43. Pizzaro saw McGurk grab and twist Davaabat's arm.

44. At least one other United employee heard McGurk call Davaabat a "chink," asked Davaabat what had caused McGurk's conduct, and inquired whether Davaabat was okay.

45. Numerous other employees were in the lunchroom on January 11, 2021, when McGurk attacked Davaabat.

46. Upon information and belief, other employees heard McGurk call Davaabat a "chink."

47. Upon information and belief, other employees observed McGurk grabbing and twisting Davaabat's arm.

48. Upon information and belief, other employees observed McGurk slap Davaabat on the back.

49. Throughout McGurk's attack, Davaabat was shocked and afraid for his physical safety and of losing his job.

50. Davaabat thought that McGurk was going to "beat [him] up."

51. From news reports, Davaabat was aware of increased episodes of Asian hate and violent attacks on Asian Americans based on the misconception that Asians caused the COVID-19 pandemic.

52. During the incident with McGurk on January 11, 2021, Davaabat felt particularly vulnerable to racial violence based on his Asian heritage and the rash of violence against Asians because of the pandemic.

53. Based on McGurk's attack on January 11, 2021, Davaabat felt McGurk racially profiled him.

54. After McGurk left, Davaabat was physically shaking.

55. Immediately after McGurk's attack, Davaabat went to report the incident to his supervisor Thomas Ready, who was located in dispatch.

56. Davaabat first told Ready that he thought McGurk was going to fire Davaabat.

57. When Ready asked what Davaabat meant, he described what McGurk had said and done to Davaabat in the crowded lunchroom, in the presence of numerous other employees.

58. Davaabat told Ready that McGurk called Davaabat a "chink."

59. Davaabat told Ready that McGurk grabbed and twisted Davaabat's arm to look at his employee badge.

60. Davaabat told Ready that McGurk threatened Davaabat's job.

61. Davaabat told Ready that McGurk slapped Davaabat on the back and said words to the effect of "Lucky for you I'm a nice guy."

62. In relating the events to Ready, Davaabat felt humiliated and afraid for his physical safety and of losing his job.

63. Davaabat felt humiliated thinking of his many coworkers who watched as McGurk directed a racist rant toward Davaabat.

64. Davaabat feared for his physical safety because of the way McGurk had grabbed and twisted his arm.

65. Davaabat also feared that McGurk had the power to fire Davaabat as McGurk had threatened in the lunchroom.

66. Davaabat told Ready that he was afraid of losing his job and seriously considering quitting.

67. Ready instructed Davaabat to write up a statement regarding McGurk's conduct in the lunchroom.

68. At no time did Ready reassure Davaabat that his job was safe.

69. Nor did Ready tell Davaabat that McGurk did not have authority to fire Davaabat.

70. Ready said he could not investigate the matter because McGurk was a higher-level manager than Ready, and instructed Davaabat to provide his written statement to Kevin Creviston.

71. Ready believed Creviston to be at a level comparable to McGurk.

72. Davaabat immediately prepared a handwritten statement and slid it under Creviston's office door because Creviston was out of the office.

73. Pizzaro also provided United a written statement confirming Pizzaro heard McGurk call Davaabat a "chink," and that Pizzaro saw McGurk grab and twist Davaabat's arm to look at his United employee badge.

74. After submitting his written statement, Davaabat returned to his work duties.

75. Toward the end of Davaabat's shift on January 11, 2021, when United had done nothing to address his complaint against McGurk or assure Davaabat's safety or his job, Davaabat used a dispatch computer to prepare his two-weeks' notice of resignation.

76. Before leaving for the day, Davaabat submitted his two-weeks' notice to Ready.

77. In Davaabat's two weeks' notice, Davaabat stated he was giving notice of his resignation because United failed to respond to Davaabat's report of McGurk's "racial discrimination" on January 11, 2021.

78. Davaabat worked his full shift on January 11, 2021.

79. Davaabat worked his regularly scheduled hours for the next two weeks.

80. Although Davaabat provided his written statement to Creviston on January 11, 2021, Creviston did not interview Davaabat or do anything to investigate Davaabat's allegations.

81. Instead, on or about January 22, 2021, Creviston informed Davaabat that there was nothing Creviston could do because Davaabat's complaint involved a manager above Creviston's authority level, requiring that Creviston "send it up the corporate ladder."

82. Between January 11, 2021 and January 25, 2021, no one from United contacted Davaabat to investigate his January 11, 2021 report of discrimination and harassment by McGurk.

83. United's Corporate Security Group was responsible for investigating Davaabat's complaint against McGurk.

84. Between January 11, 2021 and January 25, 2021, no one from United's Corporate Security Group contacted Davaabat about his January 11, 2021 report of discrimination and harassment by McGurk.

85. Between January 11, 2021 and January 25, 2021, United did nothing to assure Davaabat's physical safety at work.

86. Between January 11, 2021 and January 25, 2021, United did nothing to assure Davaabat that his position at United was secure.

87. Between January 11, 2021 and January 25, 2021, United did nothing to assure Davaabat that McGurk would not be allowed to further assault Davaabat or threaten his job.

88. By its failure to take any steps to either investigate Davaabat's allegations or protect him from further racially hostile harassment, United further contributed to and exacerbated the racially hostile work environment for Davaabat.

89. As of January 25, 2021, Davaabat had no assurances of his personal and professional security at United, and had received no contact from any United employee purporting to investigate the racial harassment and assault by a United manager on January 11, 2021.

90. Lacking any assurance from United that it would either investigate his allegations or protect him from further racially hostile harassment, Davaabat felt forced to resign his employment from United at the end of his shift on January 25, 2021.

91. As background to McGurk's attack on January 11, 2021, Davaabat previously experienced discrimination and harassment based on his race (Asian American) and/or his national origin (Mongolian) when he first started working for United in 2019, and for about six months, several of his coworkers called him "Chinaman," instead of his name.

92. Davaabat told these coworkers to call him by his nickname "Bondok," but his coworkers said his name was too hard to pronounce and continued to call him "Chinaman."

93. On a daily basis, from February 11, 2019 until sometime in or around August 2019, Davaabat's coworkers referred to him only as "Chinaman."

94. Upon information and belief, Davaabat's coworkers offensive conduct of calling him "Chinaman" was open and notorious such that management knew or should have known about the behavior.

95. United's Corporate Security Group eventually issued an investigative report ("United Report") describing the investigative efforts and conclusions of Investigator Monique Morris, regarding Davaabat's January 11, 2021 report of racial discrimination and harassment by United Manager McGurk.

96. According to the United Report, United did not begin investigating the January 11, 2021 incident until February 16, 2021, more than a month after McGurk's attack.

97. According to the United Report, McGurk was not interviewed until March 8, 2021, nearly two months after the January 11, 2021 attack.

98. According to the United Report, Pizzaro was not interviewed until May 24, 2021, more than four months after the January 11, 2021 attack.

99. The United Report found Davaabat's allegations about the January 11, 2021 attack were substantiated.

100. The United Report relies on Pizarro's testimony documented in his written statement provided January 11, 2021.

101. According to United records, United gave McGurk a pay raise in April 2021, while United was investigating allegations that in January 2021, McGurk had

engaged in a racially discriminatory attack on an employee in the presence of other employees in the lunchroom.

102. On July 13, 2021, McGurk signed a Separation Agreement and General Release that allowed him to "retire in lieu of termination" from United.

103. In consideration for signing the Separation Agreement and General Release, McGurk became eligible for United's retiree pass travel, retained his accrued and unused vacation, and received a neutral reference.

104. Upon information and belief, United should have known about McGurk's propensity to create a race-based hostile work environment because United had received previous complaints about McGurk using racial slurs and acting inappropriately toward minority employees.

**FIRST CLAIM FOR RELIEF**
**[Hostile Work Environment Because of Race and/or National Origin 42 U.S.C. §§ 2000e-2(a) and 2000e-5(f)(1)]**

105. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

106. Since at least January 11, 2021, United violated section 703(a) of Title VII, 42 U.S.C. §2000e-2(a), by subjecting Alsunbayar Davaabat to a hostile work environment based on his race (Asian American) and/or national origin (Mongolian).

107. The offensive conduct described in the preceding paragraphs was sufficiently severe or pervasive to alter the terms and conditions of employment for Davaabat.

108. The harassment and hostile work environment to which Davaabat was subjected was based on his race and/or national origin and was perpetrated by a high-level manager for United who had actual or apparent authority over Davaabat.

109. United knew or should have known of the race- and/or national origin-based hostile work environment because United supervisors and managers observed it, because the harassment was frequent and notorious in nature, and/or because Davaabat complained about it.

110. United failed to take prompt or effective action to prevent, correct, or remedy the work environment that was hostile for Davaabat based on his race and/or national origin.

111. The effect of the practices complained of above has been to deprive Davaabat of equal employment opportunities, and otherwise adversely affect his status as an employee, because of his race (Asian American) and/or national origin (Mongolian).

112. The unlawful employment practices complained of above were intentional.

113. The unlawful employment practices complained of above were done with malice or reckless indifference to Davaabat's federally protected rights.

114. As a result of the events and actions described above, Davaabat has been deprived of equal employment opportunities, experienced emotional pain, suffering,

inconvenience, loss of enjoyment of life, and humiliation, and was otherwise adversely affected because of his race (Asian American) and/or national origin (Mongolian).

## SECOND CLAIM FOR RELIEF
## [Constructive Discharge - 42 U.S.C. § 2000e-2(a)]

115. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

116. In considering the totality of the circumstances, Davaabat's working conditions created by the unlawful actions alleged in the proceeding paragraphs were so intolerable that a reasonable person in the plaintiff's position – meaning an Asian American employee, including, without limitation, being subjected to such race and/or national origin harassment, being singled out by a high-level manager and subjected to a racial slur, physical assault, public ridicule, threats to their employment, and an employer who for two weeks took no action – would feel compelled to resign.

117. The unlawful employment practices complained of in the paragraphs above were intentional.

118. The unlawful employment practices described in the paragraphs above were done with malice or with reckless indifferent to Davaabat's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining United, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race and/or national origin.

B. Order United to institute and carry out policies, practices, and programs which provide equal employment opportunities for Asian American employees or employees of Asian descent, which eradicates the effects of its past and present unlawful employment practices, including, but not limited to providing annual programming emphasizing the history and contributions of Asian Americans, while also addressing past violence against this ethnic group.

C. Order United to make Alsunbayar Davaabat whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including backpay and lost benefits with prejudgment interest, where appropriate, and other affirmative and equitable relief necessary to eradicate the effects of United's unlawful employment practices, including but not limited to, reinstatement or front pay in lieu thereof, where appropriate, in amounts to be determined at trial.

D. Order United to make Alsunbayar Davaabat whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including emotional pain, suffering,

inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

E. Order United to pay Alsunbayar Davaabat punitive damages for United's malicious and reckless conduct as described in the paragraphs above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper.

G. Award the Commission its costs in this action.

RESPECTFULLY SUBMITTED this 4th day of September, 2024.

Karla Gilbride
General Counsel

Christopher Lage
Deputy General Counsel

Mary Jo O'Neill
Regional Attorney
Phoenix District Office

Rita Byrnes Kittle
Assistant Regional Attorney
Denver Field Office

*/s/ La Kischa J. Cook*
La Kischa J. Cook
Trial Attorney
Denver Field Office
Telephone: (720) 779-3603
Email: lakischa.cook@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Phoenix District Office

**PLEASE NOTE:** For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Deputy General Counsel in Washington, D.C.